**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MILES G. DAVIS**<br>% DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>and<br><br>**CAREY CAMERON-DAVIS**<br>% DannLaw<br>15000 Madison Avenue<br>Lakewood, OH 44107<br><br>Plaintiffs,<br><br>v.<br><br>**SELENE FINANCE, LP,**<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, OH 43215<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Miles G. Davis and Carey Cameron-Davis, through counsel, and for their Complaint for Damages against Defendant Selene Finance, LP (the "Complaint") state as follows:

**<u>PARTIES, JURISDICTION, AND VENUE</u>**

1. Plaintiffs Miles G. Davis and Carey Cameron-Davis (collectively "Plaintiffs" or the "Davises") are the owners of the real property and improvements located thereupon located at and commonly known as 128 Emerson Avenue, Berea, Ohio 44017 (the "Home").

2. The Davises currently occupy and maintain the Home as their primary, principal residence and have maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3. On or about November 29, 2006, the Davises executed a promissory note (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan").

4. Selene Finance, LP ("Defendant" or "Selene") is a foreign limited partnership formed under the laws of the State of Delaware that maintains its headquarters and principal place of business in Dallas, Texas.

5. Servicing rights to the Loan transferred from the prior servicer, non-party Gregory Funding, LLC ("Gregory Funding")[1], to Selene effective April 10, 2024, and Selene has serviced the Loan at all times since.

6. On information and belief, Selene services the Loan on behalf of the current creditor, owner, and/or assignee of the Loan—an entity other than itself, believed to be U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for RCF 2 Acquisition Trust (the "Trust").

7. Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA").

8. This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

9. Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) a substantial part of the events or omissions giving rise to the claims asserted herein occurred within

[1] Gregory Funding filed a Certificate of Cancellation of Registration of a Foreign Limited Liability Company with the Ohio Secretary of State on December 20, 2024, and was no longer authorized to transact business in the State of Ohio as of such date. Further, Gregory Funding is now defunct, having filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Delaware, Petition No. 1:26-bk-10958, on or about June 11, 2026.

this District; and, (2) the Home, the property that is the subject of the action, is located in Cuyahoga County, Ohio, within this District and Division.

## SUMMARY OF CLAIMS

10. This action is filed to enforce statutory provisions of RESPA as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

11. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

12. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

13. The Davises assert claims for relief against Selene for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

14. Selene is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

15. The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

16. The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

17. The Loan is secured by the Home which is the Davises' principal residence. 12 C.F.R. § 1024.30(c)(2).

18. Selene is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

19. Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

20. Mortgage servicers are prohibited from failing "to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D).

21. Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

22. The Davises have a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

23. The Davises also assert statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

24. The Davises are each a "buyer" as defined by R.C. 1322.01(I), as they are each an individual whose mortgage loan is serviced by a mortgage servicer, Selene.

25. Selene is a mortgage servicer under the RMLA as it holds "the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

26. Selene is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## FACTUAL BACKGROUND

27. Gregory Funding, the prior servicer of the Loan, imposed, collected, and attempted to collect a number of delinquency-related fees and/or charges against the Loan that it had no basis to charge or collect.

28. On or about December 27, 2023, Gregory Funding sent the Davises a Loan Charge Summary. *See*, a copy of the Loan Charge Summary, attached as Exhibit 1.

29. The Loan Charge Summary contains twenty-four (24) improper charges for interest on escrow advances that range from $0.04 to $25.61. *See*, Exhibit 1.

30. The Loan was also improperly charged $8,536.85 for an *anticipated* foreclosure legal fee that Gregory had not yet incurred. *See*, Exhibit 1.

31. Due to the aforementioned errors, the Davises were unable to utilize Ohio Save the Dream funds to reinstate the Loan, as Gregory Funding reported that the amount to reinstate the Loan was in excess of the $25,000.00 program cap by $8,038.92.

32. Had Gregory Funding transmitted the correct information to Ohio Save the Dream, the Loan would have been fully reinstated and Gregory Funding would not have been entitled to the $8,536.85 it previously "anticipated."

33. As the current servicer of the Loan since April 10, 2024, Selene is responsible for correcting errors in the servicing of the Loan, including errors committed by Gregory Funding, upon receipt of a notice of error. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

34. For all times relevant, Selene has designated the following address for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

Selene Finance LP
ATTN: Customer Service Research
P.O. Box 8279
Philadelphia, PA 19101-8279

35. On October 23, 2024, the Davises, through counsel, sent the following correspondence, each a request for information pursuant to 12 C.F.R. § 1024.36, to Selene at the Designated Address:

a. Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and,

b. Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

*See*, copies of RFI #1 and RFI #2, along with tracking information evidencing delivery of the same, attached as Exhibit 2 and Exhibit 3, respectively.

36. Selene received RFI #1 and RFI #2 at the Designated Address on or before October 26, 2024. *See*, Exhibits 2 and 3.

37. On or about October 29, 2024, Selene sent correspondence acknowledging its receipt of RFI #1 and RFI #2.

38. On or about November 8, 2024, Selene sent correspondence requesting an additional fifteen (15) business days to respond to RFI #1 and RFI #2.

39. Selene failed to respond to RFI #1's request for information concerning the identity of, and address or other relevant contact information for, the owner or assignee of the Loan within ten (10) business days of receipt, or by November 8, 2024. *See*, Exhibit 2.

40. Selene failed to respond to RFI #2's requests for information concerning the Loan within forty-five (45) business days of receipt, or by January 3, 2025. *See*, Exhibit 3.

41. On or about October 23, 2024, the Davises, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to Selene at the Designated Address. *See*, a copy of NOE #1, along with tracking information evidencing delivery of the same, attached as Exhibit 4.

42. Through NOE #1, the Davises asserted multiple covered errors pursuant to 12 C.F.R. § 1024.35(b)(5) and (11) related to the imposition or attempted collection of fees or amounts for which there was no reasonable basis to impose or claim due, specifically the charges for interest on escrow advances and the $8,536.85 anticipated foreclosure legal fee, as detailed, *supra*. *See*, Exhibit 4.

43. Selene received NOE #1 at the Designated Address on or before October 29, 2024. *See*, Exhibit 4.

44. On or about November 5, 2024, Selene sent correspondence acknowledging receipt of NOE #1.

45. On or about November 14, 2024, Selene sent correspondence requesting an additional fifteen (15) business days to respond to NOE #1.

46. Selene failed to respond to NOE #1 within forty-five (45) business days of receipt, or by January 7, 2025. *See*, Exhibit 4.

47. On or about January 3, 2025, the Davises, through counsel, sent another notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #2") to Selene at the Designated Address. *See*, a copy of NOE #2, along with tracking information evidencing delivery of the same, attached as Exhibit 5.

48. Through NOE #2, the Davises asserted a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for Selene's failure to properly and timely respond to RFI #1, and made renewed requests for the information originally sought through RFI #1. *See*, Exhibit 5.

49. Selene received NOE #2 at the Designated Address on January 6, 2025. *See*, Exhibit 5.

50. Selene failed to respond to NOE #2's renewed request for information concerning the identity of, and address or other relevant contact information for, the owner or assignee of the Loan within ten (10) business days of receipt, or by January 22, 2025. *See*, Exhibit 5.

51. On or about January 28, 2025, the Davises, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #3") to Selene at the Designated Address. *See*, a copy of NOE #3, along with tracking information evidencing delivery of the same, attached as Exhibit 6.

52. Through NOE #3, the Davises asserted a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for Selene's failure to properly and timely respond to NOE #1, and made a renewed request for Selene to correct the errors asserted through NOE #1. *See*, Exhibit 6.

53. Selene received NOE #3 at the Designated Address on February 4, 2025. *See*, Exhibit 6.

54. On or about January 29, 2025, Selene sent the Davises a response to NOE #2 ("Response #1"). *See*, a copy of Response #1, attached as Exhibit 7.

55. Response #1 claims that Selene responded to RFI #1, RFI #2, and NOE #1 through a letter dated November 13, 2024. *See*, Exhibit 7.

56. Neither the Davises nor their counsel received the November 13, 2024 letter at any point prior to February 19, 2025.

57. Although Response #1 claims to include the November 13, 2024 letter as an enclosure, Selene failed to provide this letter to the Davises. *See*, Exhibit 7.

58. On or about February 19, 2025, Selene sent the Davises a response to NOE #3 ("Response #2"). *See*, a copy of Response #2, attached as Exhibit 8.

59. Unlike Response #1, Response #2 included the November 13, 2024 letter as an enclosure. *See*, a copy of the November 13, 2024 letter, attached as Exhibit 9.

60. The November 13, 2024 letter, however, makes no reference to the errors asserted through NOE #1 and reasserted through NOE #3, does not provide the effective date of any correction of any error asserted through NOE #1, fails to provide a statement that no error had occurred, and fails to provide a statement of the reasons as to why Selene determined that no error had occurred. *See*, Exhibit 9.

61. As the November 13, 2024 letter fails to respond to NOE #1, Selene's statements in Response #1 and Response #2 that "Selene found no errors with the servicing of the account and confirms a response was provided" are wholly unsupported. *See*, Exhibits 7, 8, and 9.

62. Even if the November 13, 2024 letter had been provided to the Davises or their counsel, which it was not, such correspondence is not a timely response to RFI #1.

63. The November 13, 2024 letter also fails to provide the Davises with a copy of any servicing notes related to Selene's servicing of the Loan since Selene obtained servicing rights to the Loan or any reasonable justification for failing to do so. *See*, Exhibit 9.

64. Instead of correcting the errors asserted through NOE #1 and NOE #3 or otherwise properly responding to NOE #1 and NOE #3, Selene allowed the Trust to file a foreclosure action against the Davises on March 31, 2025 in the Court of Common Pleas for Cuyahoga County, Ohio, Case No. CV-25-114728 (the "Foreclosure"), which remains pending.

**IMPACT UPON AND DAMAGES SUFFERED BY THE DAVISES**

65. To date, the Davises have not received any substantive response to their notices of error.

66. Selene's improper actions caused the Davises to suffer actual and proximate damages including, but not limited to:

a. The loss of approximately $25,000.00 in Ohio Save the Dream funding, which the Davises would not have had to pay back, to reinstate the Loan;

b. Attorneys' fees, costs, and expenses, as well as court costs, filing fees, and other amounts incurred as a result of needing to defend the Foreclosure, which would have been unnecessary but for Selene's actions;

c. Improper and unwarranted amounts, fees, and charges imposed against or otherwise claimed due and owing on the Loan, and the attempted collection of such amounts, fees, and charges, including any default servicing related fees for which the Davises are personally obligated or which otherwise negatively impact any equity in the Home to which they are entitled;

d. Harm to the Davises' credit and a delay in the rehabilitation of their credit which would have been avoided had Selene acted appropriately in relation to the error resolution process for the Loan and not allowed the Trust to file the Foreclosure;

e. Legal fees, costs, and expenses incurred to take reasonable steps to defend the Foreclosure;

f. Legal fees, costs, and expenses to submit each notice of error and request for information, described, *supra*, in a good faith attempt to amicably resolve this matter or to have Selene mitigate the harm caused to the Davises, to which they did not receive proper or adequate responses; and,

g. Severe emotional distress driven by Selene's wrongful conduct related to its failure to properly and timely respond to the Davises' requests for information and notices of error and its pursuit of the Foreclosure, and by justified fear that the ensuing delinquency will result in a foreclosure sale of the Home, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## **PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SELENE**

67. Selene's actions are part of a pattern and practice of behavior in violation of the Davises' rights and in abdication and contravention of Selene's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

68. Consumers nationwide have lodged complaints against Selene on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints/.

69. The Davises have reviewed the CFPB's consumer complaint database and have identified narratives asserting that Selene engaged in similar conduct against other borrowers, including the fifteen (15) consumer complaints attached hereto as Group Exhibit 10. The date,

details, and narrative disclosed by the consumer are set forth in each complaint, and the complaints show conduct which demonstrates that Selene has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE:**
**VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)**

**(Failure to properly respond to RFI #1, RFI #2, and the renewed request in NOE #2)**

70. The Davises restate and incorporate all of the statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

71. "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

72. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower." Supplement I to Part 1024.

73. A servicer must respond to a request for information by either:

> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
>
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

74. A servicer must comply with the requirements of 12 C.F.R. § 1024.36(d)(1):

> (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of,

and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

75. RFI #1 and RFI #2 each constitutes a request for information as defined by 12 C.F.R. § 1024.36(a) as each is a written request from the Davises that included their names, mortgage loan account number, and property address and requested information related to the Loan. *See*, Exhibits 2 and 3.

76. Selene received RFI #1 and RFI #2 at the Designated Address on October 26, 2024. *See*, Exhibits 2 and 3.

77. Selene failed to respond to RFI #1's request for information concerning the identity of, and address or other relevant contact information for, the owner or assignee of the Loan within ten (10) business days of receipt, or by November 8, 2024, in violation of 12 C.F.R. §§ 1024.36(d)(1) and (2)(i)(A) and 12 U.S.C. §§ 2605(k)(1)(D) and (E).

78. As a direct and proximate result of Selene's failure to properly respond to RFI #1, on or about January 3, 2025, the Davises sent NOE #2 to Selene, through which they made a renewed request for the information sought through RFI #1. *See*, Exhibit 5.

79. Selene received NOE #2 at the Designated Address on January 6, 2025, and failed to respond to the renewed request for information concerning the identity of, and address or other relevant contact information for, the owner or assignee of the Loan within ten (10) business days of receipt, or by January 22, 2025, in violation of 12 C.F.R. §§ 1024.36(d)(1) and (2)(i)(A) and 12 U.S.C. §§ 2605(k)(1)(D) and (E). *See*, Exhibit 5.

80. Selene failed to respond to RFI #2's requests for information concerning the Loan within forty-five (45) business days of receipt, or by January 3, 2025, in violation of 12 C.F.R. §§ 1024.36(d)(1) and (2)(i)(B) and 12 U.S.C. § 2605(k)(1)(E).

81. On or about January 29, 2025, Selene sent the untimely Response #1 in response to RFI #1, RFI #2, and/or the renewed request, which failed to provide any of the information requested. *See*, Exhibit 7.

82. On or about February 19, 2025, Selene sent the untimely Response #2, which fails to provide the Davises with a copy of any servicing notes related to Selene's servicing of the Loan since Selene obtained servicing rights to the Loan. *See*, Exhibits H and I.

83. Selene's actions constitute violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(k)(1)(D) and (E) and have caused the Davises to suffer actual damages, as discussed, *supra*, including, but not limited to, attorneys' fees and postage costs associated with the preparation and sending of NOE #2, which would not have been necessary but for Selene's failure to properly respond to RFI #1.

84. Further, Selene's failure to comply with 12 C.F.R. § 1024.36(d) and 12 U.S.C. §§ 2605(k)(1)(D) and (E) caused the Davises' attorneys' fees and costs associated with the preparation of RFI #1, RFI #2, and NOE #2 to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (*Marais II*), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (*Marais I*), 736 F.3d 711, 721 (6th Cir. 2013).

85. Selene's actions are part of a pattern and practice of behavior in conscious disregard for the Davises' rights and in abdication of Selene's obligations under RESPA and Regulation X.

86. As a result of Selene's actions, Selene is liable to the Davises for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

87. Additionally, the Davises request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO:**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)**

**(Failure to properly respond to NOE #1 and NOE #3)**

88. The Davises restate and incorporate all of the statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

89. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

90. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

91. A servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2).

92. A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

> (A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
> (B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
> (C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

93. RESPA and Regulation X's error resolution mechanism "makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary." *Renfroe*, 822 F.3d at 1246; *see Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 902-903 (11th Cir. 2018).

94. CFPB Official Interpretation No. 1 to 12 C.F.R. § 1024.38(b)(1) provides that "[a] servicer's policies and procedures must be reasonably designed to provide for promptly obtaining information from service providers to facilitate achieving the objective of correcting errors resulting from actions of service providers, including obligations arising pursuant to § 1024.35."

95. NOE #1 and NOE #3 each constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from the Davises that includes their names, mortgage loan account number, and property address and asserts errors that they believed to have occurred. *See*, Exhibits 4 and 6.

96. Selene received NOE #1 at the Designated Address on October 29, 2024, and failed to respond to NOE #1 within forty-five (45) business days of receipt, or by January 7, 2025, in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E). *See*, Exhibit 4; 12 C.F.R. § 1024.35(e)(3)(i)(C).

97. As a direct and proximate result of Selene's failure to properly respond to NOE #1, on or about January 28, 2025, the Davises, through counsel, sent NOE #3 to Selene at the Designated Address, which Selene received on February 4, 2025. *See*, Exhibit 6.

98. In relation to NOE #1 and NOE #3, Selene did not fulfill its obligations under 12 C.F.R. § 1024.35(e)(1)(i)(A) as Selene did not correct any of the errors identified therein.

99. In relation to NOE #1 and NOE #3, Selene did not fulfill its obligations under 12 C.F.R. § 1024.35(e)(1)(i)(B), as the November 13, 2024 letter, Response #1, and Response #2 wholly fail to address the errors asserted, which demonstrates that Selene failed to perform a reasonable investigation into the errors alleged through NOE #1 and NOE #3. *See*, Exhibits 7, 8, and 9.

100. Selene's failures to properly respond to NOE #1 and NOE #3 by failing to correct the errors or to otherwise perform reasonable investigations into and otherwise properly respond to the errors alleged constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) and have caused the Davises to suffer actual damages, as discussed, *supra*, including, but not limited to, attorneys' fees, costs, and expenses in preparing and sending NOE #3, which would not have been necessary but for Selene's failure to properly respond to NOE #1.

101. Further, Selene's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) caused the Davises' attorneys' fees and costs associated with the preparation of NOE #1 and NOE #3 to metamorphose into damages. *See Marais II*, 24 F. Supp. 3d at 726-728; *Marais I*, 736 F.3d at 721; *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018).

102. Selene's actions are part of a pattern and practice of behavior in conscious disregard for the Davises' rights and in abdication of Selene's obligations under RESPA and Regulation X.

103. As a result of Selene's actions, Selene is liable to the Davises for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

104. Additionally, the Davises request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

**COUNT THREE:**
**VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.***

105. The Davises restate and incorporate all of the statements and allegations contained in paragraphs 1 through 69 in their entirety, as if fully rewritten herein.

106. "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

107. Selene, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

108. Selene is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued Selene a certificate of registration, License No. RM.501430.000.

109. The Davises are each a buyer, as their Loan is serviced by Selene, a mortgage servicer. R.C. 1322.01(I).

110. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

111. Selene violated R.C. 1322.40(C) by allowing the Trust to file and maintain the Foreclosure instead of correcting the errors made by Gregory Funding or otherwise performing a timely and proper investigation into the errors asserted through NOE #1 and NOE #3.

112. As a result of Selene's conduct, Selene is liable to the Davises for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

113. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

114. A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

115. Selene's violations of RESPA and Regulation X, as set forth, *supra*, constitute violations of R.C. 1322.45(A).

116. Selene violated R.C. 1322.45(A)(3) and (4) by allowing the Trust to file and maintain the Foreclosure instead of correcting the errors made by Gregory Funding or otherwise performing a timely and proper investigation into the errors asserted through NOE #1 and NOE #3.

117. As a result of Selene's conduct, Selene is liable to the Davises for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D); R.C. 1322.52.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Miles G. Davis and Carey Cameron-Davis pray that this Court grant judgment against Defendant Selene Finance, LP and award them the following:

A. Actual damages from Defendant Selene Finance, LP in an amount to be determined at trial for the allegations contained in Counts One through Three;

B. An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Selene Finance, LP for each violation of RESPA contained in Counts One and Two;

C. For punitive damages against Defendant Selene Finance, LP as to Count Three;

D. For attorneys' fees and costs as to Counts One through Three; and,

E. For such other relief which this Court may deem appropriate.

## JURY DEMAND

Plaintiffs Miles G. Davis and Carey Cameron-Davis hereby respectfully demand a trial by jury on all such claims that may be so tried.

Respectfully submitted,

*/s/ Marc E. Dann*

Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Miles G. Davis and Carey Cameron-Davis*